UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARY-LOU A. GREEN,

                                 **Plaintiff,**

                    v.                                            5:07-CV-1253
                                                                   (FJS/GHL)

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

                                 **Defendant.**
_____

**APPEARANCES**                                          **OF COUNSEL**

**SATTER & ANDREWS, LLP**                **ROSS P. ANDREWS, ESQ.**
217 South Salina Street, 6th Floor          **MATTHEW BERGERON, ESQ.**
Syracuse, New York 13202
Attorneys for Plaintiff

**SCHRADER & ISRAELY**                  **ROBERT S. DELUCA, ESQ.**
2821 Wehrle Drive, Suite 3
Williamsville, New York 14221
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff was employed as a special education teacher for Enable until she went on medical leave on June 14, 1991. When she went on leave, Plaintiff was covered by a long-term disability policy ("Policy") that Defendant now administers and on which Defendant pays benefits.[1] Plaintiff ceased working on June 14, 1991, due to complaints of fibromyalgia, fatigue, and irritable bowel syndrome and began receiving long-term disability benefits on December 12,

---

[1] Continental Casualty Company initially issued the relevant policy.

1991, under the Policy's "own occupation" disability provision. On December 13, 1993, Plaintiff continued receiving benefits under the Policy's "any occupation" disability provision.

Plaintiff received payment under the Policy until March 28, 2007, at which time Defendant sent her a termination letter. On April 23, 2007, Plaintiff notified Defendant that she was appealing the termination decision. On July 25, 2007, Plaintiff submitted her appeal. Defendant issued a final decision on October 16, 2007, upholding its initial decision; and Plaintiff commenced this litigation on November 30, 2007.

In her amended complaint, Plaintiff asserts the following two claims against Defendant under the Employee Retirement Income Security Act ("ERISA"): (1) failure to provide a full and fair review of her long-term disability claim pursuant to 29 U.S.C. § 1133 and (2) wrongful termination of her long-term disability benefits pursuant to 29 U.S.C. § 1132(a)(1)(b).

## II. DISCUSSION

**A.  Standard of review and the record before the Court**

"Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing Fed. R. Civ P. 56(c)). Where a benefit plan does not give the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, a district court reviewing a denial of benefits applies a *de novo* standard of review. *See Lijoi v. Cont'l Cas. Co.*, 414 F. Supp. 2d 228, 237 (E.D.N.Y. 2006) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989)); *see also DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61, 66-67 (2d Cir.

1997).

In this case, the parties agree that the Plan does not grant any discretionary authority to Defendant and that, therefore, the *de novo* standard of review applies. When applying this standard of review, the court reviews all aspects of the denial including factual issues to determine whether the claimant should receive the requested relief. *See Lijoi*, 414 F. Supp. 2d at 238 (citations omitted). Plaintiff has the burden to prove, by a preponderance of the evidence, that she is totally disabled. *See Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 441 (2d Cir. 2006). The record on *de novo* review is limited to the record before the claims administrator unless the court finds good cause to consider additional evidence. *See DeFelice*, 112 F.3d at 66-67. Since neither party has argued that good cause exists to consider additional evidence nor have they submitted any additional evidence, the Court will limit its review to the record that was before the claims administrator.

**B.      Plaintiff's § 1133 claim**

ERISA requires that, when a benefit plan denies a claim for benefits, it must "provide adequate notice in writing . . . setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant[.]" 29 U.S.C. § 1133(1). Such notice applies to "any adverse benefit determination" and must include "(i) The specific reason or reasons for the adverse determination; . . . [and] (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material is necessary . . . ." 29 C.F.R. § 2560.503-1(g)(1).

The Second Circuit requires substantial compliance to meet § 1133's full and fair review

-3-

requirement. *See Cook v. N.Y. Times Co. Long-Term Disability Plan*, No. 02 Civ. 9154, 2004 WL 203111, *6 (S.D.N.Y. Jan. 30, 2004) (citing *Burke v. Kodak Retirement Income Plan*, 336 F.3d 103, 107-09 (2d Cir. 2003)). To assess whether notice was adequate, precise compliance is not required "as long as the plan administrator has substantially complied with such regulations and has provided the beneficiary with sufficient information to appeal the denial." *Camarda v. Pan Am. World Airways, Inc.*, 956 F. Supp. 299, 311 (E.D.N.Y. 1997). "Substantial compliance means that the beneficiary was 'supplied with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review.'" *Cook*, 2004 WL 20311, at *6 (quotation omitted).

In the termination letter that Defendant sent to Plaintiff, there were several references to the lack of objective evidence to support Plaintiff's long-term disability claim. When discussing Dr. Forbes' and Dr. Hyla's office notes, Defendant noted that physical findings were normal or not mentioned, respectively. *See* Affidavit of Nancy Deskins dated October 9, 2008 ("Deskins Aff."), Exhibit "B" ("Claim File") at 155. When discussing Dr. Marion's review, the letter noted that Dr. Forbes agreed that there was "'no specific objective impairment;'" that "[n]either Dr. Hart [n]or Dr. Forbes were able to provide any quantitative findings supporting . . . impairment;" and that Dr. Marion opined that "there remains no objective impairment to support any specific objective occupational restrictions/limitations." *See id.* at 156.

Although the termination letter never directly stated that the lack of objective evidence was the key issue with respect to Plaintiff's claim, the Court finds that the letter, in language that Plaintiff was capable of understanding, made it clear that the lack of objective evidence was the key reason for Defendant's determination with respect to Plaintiff's limitations. Therefore, the

Court concludes that Defendant's termination letter substantially complies with the requirement that the notice provide the claimant with the reasons for the termination of her benefits.

Alternatively, Plaintiff argues that the termination letter did not include a description of any additional information or material she needed to submit to perfect her claim and did not include an explanation as to why such material or information was necessary. Although Defendant's letter contains a general instruction that Plaintiff could submit additional information, it is clear that Defendant did not deny Plaintiff's claim because any specific information was missing. *See, e.g., Camarda*, 956 F. Supp. at 311 (discussing denial because claimant failed to provide plan-required information about Social Security benefits). Based on the record, the Court concludes that Defendant did not deny Plaintiff's claim because any specific information was missing that would trigger the requirement that Defendant provide her with a description of the information necessary to perfect her claim; and, furthermore, the discussion of the medical evidence makes it clear what information is missing.

Accordingly, for all of the above-stated reasons, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's § 1133 claim and denies Plaintiff's motion for summary judgment with respect to that claim.

**C.    Plaintiff's claim for reinstatement of her long-term disability benefits**

Plaintiff asserts that Defendant wrongfully terminated her long-term disability benefits and improperly relied on a lack of objective evidence of a functional impairment, totally ignored her treating physicians, despite stating that it did not dispute their findings, and disregarded her receipt of social security benefits.

In response, Defendant claims that it properly relied on independent medical reviews that there was no objective evidence to substantiate Plaintiff's subjective complaints. Defendant also argues that receipt of social security benefits is not binding on this Court and is irrelevant to the issue of whether Plaintiff has submitted sufficient proof of disability.

The Policy defines total disability as follows: "because of Injury or Sickness, the Insured Employee is: (1) continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience; and (2) under the regular care of a licensed physician other than himself." *See* Defendant's Statement of Undisputed Material Facts and Plaintiff's Response thereto ("Defendant's Facts and Plaintiff's Response") at ¶ 10 (citing Policy at 4). The claimant must provide proof of disability. *See id.* at ¶ 14,

On a Disability Claim Form dated August 23, 2004, Plaintiff stated that she was receiving treatment for fibromyalgia, chronic fatigue, chronic dizziness, chronic headaches, gastro-esophageal reflux disease, irritable bowel syndrome, and gastroparesis. *See id.* at ¶ 22. Dr. James F. Hyla completed an Attending Physician's Statement dated August 23, 2004, in which he reported fibromyalgia with subjective symptoms; he opined that Plaintiff was totally disabled because fatigue prevented a four-hour work day and that Plaintiff could barely perform the activities of daily living. *See id.* at ¶¶ 24-27. Dr. Hyla did not identify any objective evidence to substantiate Plaintiff's subjective complaints. *See id.* at ¶ 28.

In late 2005, Plaintiff completed a Claimant Questionnaire in which she identified her medical conditions, which then included, in addition to the conditions in the 2004 statement, osteomalacia, TMJ, endometriosis, vision-accommodative deficiency, convergence insufficiency, and in which she cited her lack of energy and fatigue in addition to stomach pain. *See id.* at ¶ 30.

In an accompanying Attending Physician's Statement, Dr. Hyla stated that Plaintiff's primary and only diagnosis was fibromyalgia with subjective symptoms of pain, lack of sleep, IBS and cognitive changes. *See id.* at ¶ 32. The record also contains Dr. Hyla's notes from 2005 and early 2006, in which Dr. Hyla notes, throughout this time period, that Plaintiff has fibromyalgia but that she is doing reasonably well, sleeping better, and not napping, and doing better. *See id.* at ¶¶ 36-37.

In addition, the record contains notes from an internist, Dr. Ray T. Forbes, from 2002-2006. On May 18 2006, Dr. Forbes, citing no objective data, noted that Plaintiff appeared stable but complained of "mind fog" from gastroparesis and fibromyalgia. *See id.* at ¶¶ 45-46. None of Dr. Forbes' notes provide any objective medical data or objective information about Plaintiff's functionality or capabilities. *See id.* at ¶ 50.

Defendant reviewed notes and records from Plaintiff's gastroenterologist, Dennis W. Reedy, M.D., from August 2005 through February 2006. *See id.* at ¶ 51. Dr. Reedy's notes indicated that Plaintiff's IBS was under excellent control and stable; Dr. Reedy did not provide any objective medical data. *See id.* at ¶¶ 52-55.

Defendant also received notes from Gale Atesta, FNP, in which he noted subjective complaints of pain, headaches, fatigue, and muscle tension but normal physical examination results and no objective medical data. *See id.* at ¶¶ 56-59.

On October 18, 2006, Dr. David Inslicht performed an independent medical examination ("IME") and noted that Plaintiff had been diagnosed with fibromyalgia, chronic fatigue syndrome, IBS, gastroparesis, and hypothyroidism. *See id.* at ¶¶ 61, 63. Dr. Inslicht concluded that Plaintiff's diagnoses were all conditions without physical or laboratory findings with no

objective findings on which to base a determination of disability. Based on Plaintiff's ability to complete a questionnaire and their conversation, he concluded that Plaintiff was at least capable of working part time in a sedentary capacity. *See id.* at ¶ 69.

Defendant reviewed notes from Patricia Hart, D.O., who opined that Plaintiff had fibromyalgia, chronic fatigue syndrome, chronic myalgias, migraine headaches, and TMJ, none of which were well-controlled. *See id.* at ¶¶ 74-75.

Tiffany Dyenson, MS, CRC, after reviewing Plaintiff's employment history, education, skills and Dr. Inslicht's conclusion that Plaintiff could perform sedentary work, opined that Plaintiff could work as an assignment clerk or a referral clerk. *See id.* at ¶¶ 78-80.

Dr. Philip Marion of Reed Review Services performed an independent medical examination at Defendant's request. *See id.* at ¶¶ 81-83. Dr. Marion reviewed Plaintiff's clinical history, including the fibromyalgia diagnosis, the clinical notes, Dr. Inslicht's report and conclusions, and the medical records from Dr. Hart. *See id.* at ¶¶ 84-88. Dr. Marion spoke with Dr. Forbes who agreed that there were no objective impairments precluding working but that Plaintiff's fatigue and pain prevented her from working. *See id.* at ¶¶ 90-91. Dr. Hart also confirmed to Dr. Marion that "Plaintiff had 'no specific objective neurological or musculoskeletal deficits.'" *See id.* at ¶ 92. Dr. Marion disagreed with Dr. Inslicht's limitations of three hours per day, four days per week, and instead found a capability of four hours per day, three days per week. *See id.* at ¶ 94. Dr. Marion agreed with Dr. Inslicht's opinion that, based on objective findings, "there remain[ed] no objective impairment to support any specific occupational restrictions/limitations." *See id.*

Plaintiff also submitted additional evidence with her appeal from Defendant's initial

termination of her long-term disability benefits. Dr. Hyla submitted an affidavit, in which he stated that Plaintiff had fibromyalgia with pain and fatigue that resulted in problems conducting day-to-day activities and that light cleaning or lifting might cause Plaintiff severe discomfort; accordingly, Dr. Hyla opined that Plaintiff was disabled from any employment based on her fibromyalgia. *See id.* at ¶¶ 116-17, 119-20. Dr. Hyla also opined that Plaintiff "genuinely experience[d] debilitating pain and fatigue" and "often ha[d] problems carrying out normal day-to-day activities." *See* Claim File at 34-35; *see also* Defendant's Facts and Plaintiff's Response at ¶ 118. In addition, Dr. Forbes submitted an affidavit, in which he listed Plaintiff's medical problems as chronic fatigue syndrome, fibromyalgia, irritable bowel syndrome, TMJ, depression, migraine headaches, and chest pains. *See* Claim File at 37. Dr. Forbes concluded that Plaintiff was disabled from any type of employment because of her fatigue and that overexertion caused her symptoms to get worse. *See id.* at 37-38.

  In response to Plaintiff's appeal, Defendant requested a second independent medical record review from Quida D. Draine, M.D., and Dr. Wolfgang G. Gillar, D.O. *See* Defendant's Facts and Plaintiff's Response at ¶¶ 129-132. Dr. Draine noted that Plaintiff's physician had noted that Plaintiff was "'doing reasonably well . . . [and] walking more.'" *See id.* at ¶ 133. Dr. Draine, based on the lack of objective data to support any work restrictions, concluded that the medical evidence did not support continuous functional impairment within a sedentary level of activity. *See id.* at ¶¶ 135-36. Dr. Gillar spoke with Dr. Hart, who reported that the osteopathic care was helpful to Plaintiff and that there might be associated psychological issues that affected the clinical situation. *See id.* at ¶¶ 139-40. Dr. Gillar noted the diagnosis of fibromyalgia but also concluded that "'there exist[ed] no objectively verifiable information that would preclude

this claimant from working at the sedentary level' . . . [and] that 'there [were] no objective findings and going solely based on objective findings, there [was] no reason for [Plaintiff's] "disability."'" *See id.* at ¶¶ 141-42.

The parties raise three legal issues with respect to Plaintiff's long-term disability benefits claim: (1) the weight given her treating physicians' opinions; (2) the effect of a social security disability determination; and (3) objective versus subjective evidence.

When conducting a *de novo* review, a district court owes no special deference to a claimant's treating physicians; however, the court may consider and give appropriate weight to treating physicians' conclusions if they are reliable and probative. *See Paese*, 449 F.3d at 442 (citation omitted). Moreover, "especially when the chief symptoms of the illnesses are subjective – such as those symptoms associated with fibromyalgia . . . – due weight should be given to the treating physician's findings since that physician has the most experience with the patient and . . . her history with the symptoms of the illness." *Diamond v. Reliance Standard Life Ins.*, 672 F. Supp. 2d 530, 537 (S.D.N.Y. 2009).

Likewise, although a court may consider the findings of the Social Security Administration regarding a claimant's disability as evidence of disability even where the disability definition is different, such findings are not binding on a court conducting a *de novo* review. *See Paese*, 449 F.3d at 442 (citations omitted).

Finally, when conducting a *de novo* review, the court is not required to accept subjective complaints of pain as credible; however, it is error to discount them merely because they are "subjective." *See Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 136-37 (2d Cir. 2001) (citations omitted). A court may not dismiss credible subjective complaints of pain as legally

insufficient. *See Krizek v. Cigna Group Ins.*, 345 F.3d 91, 101-02 (2d Cir. 2003) (citations omitted). However, if the court determines that the subjective complaints are overstated or not credible, the court may find that a claimant has not satisfied her burden to prove disability within the meaning of a plan. *See Krizek v. Cigna Group Ins.*, No. 5:99 CV 1943, 2005 WL 928637, *4-*5 (N.D.N.Y. Mar. 22, 2005); *Straehle v. INA Life Ins. Co. of N.Y.*, 392 F. Supp. 2d 448, 460 (E.D.N.Y. 2005) (finding the severity of claimant's complaints inconsistent with the bulk of objective medical evidence and noting that claimant's own physicians suspected exaggeration of symptoms and limitations).

  Defendant relies heavily on a distinction between objective evidence of a medical condition and objective evidence of disability. *See, e.g., Parisi v. Unumprovident Corp.*, No. 3:03CV01425, 2007 WL 4554198, *12 (D. Conn. Dec. 21, 2007) (finding that requiring objective evidence of multiple chemical sensitivity syndrome for which there is no conclusive test would be arbitrary and capricious, but finding that a denial based on the lack of objective medical evidence of the claimant's symptoms or their effect on the ability to work would not be arbitrary and capricious (citation omitted)). Relying on this distinction, one court has found that a plan administrator was not arbitrary and capricious in requiring objective proof about the claimant's ability to work and noted, in *dicta*, that, even under the *de novo* standard, the court would reject these claims for lack of material objective evidence. *See Maniatty v. Unumprovident Corp.*, 218 F. Supp. 2d 500, 504-05 (S.D.N.Y. 2002), *aff'd*, 62 Fed. Appx. 413 (2d Cir. 2003). However, the *Maniatty* court noted that it was "skeptical" of the plaintiff's claims of chronic fatigue syndrome and fibromyalgia because she only raised them at her final appeal despite her contention that she had suffered from both conditions for years. *See id.* Further,

applying the more deferential arbitrary and capricious standard, one court has found that a plan erred in disregarding credible subjective evidence of pain. *See Smith v. Champion Int'l Corp.*, 573 F. Supp. 2d 599, 653-54 (D. Conn. 2008) (noting that the record did not suggest doubt about the claimant's credibility or that her pain was insufficient to prevent her from working).

Applying these legal principles, the Court has considered Plaintiff's subjective complaints of pain as well as her treating physicians' opinions. Although the Court is aware that it owes these opinions no special deference, it finds that, in light of the fact that Plaintiff has been diagnosed with fibromyalgia, her treating physicians' opinions are due significant weight and are very helpful given their experience with Plaintiff and their familiarity with the history of her symptoms. In addition, the Court notes that Defendant does "not dispute [Plaintiff's treating physicians'] opinions or contentions concerning Plaintiff." *See* Defendant's Facts and Plaintiff's Response at ¶ 146; *see also id.* at ¶ 149 (noting that Defendant's appeal determination stated that Defendant did not dispute Plaintiff's condition or the treatment procedure that she had received). Furthermore, Defendant has offered no evidence or argument that puts Plaintiff's credibility in doubt, choosing instead to focus on the lack of objective evidence. Likewise, the Court's own review of the record reveals nothing that would cause the Court to doubt Plaintiff or her physicians.[2] Therefore, the Court concludes that, with no evidence to the contrary, Plaintiff's complaints and statements about her abilities and her condition, including her subjective claims, are credible and that her treating physicians' opinions support such claims. Therefore, based on

---

[2] The Court notes that, in another context, the Second Circuit has observed "that fibromyalgia is a disabling impairment and that 'there are no objective tests which can conclusively confirm the disease.'" *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (discussing a claim for social security disability benefits (quotation and other citations omitted)).

its *de novo* review of the record, the Court finds that Plaintiff is totally disabled within the meaning of the Plan. Accordingly, the Court grants Plaintiff's motion for summary judgment and denies Defendant's motion for summary judgment with regard to Plaintiff's long-term disability claim and directs Defendant to reinstate Plaintiff's long-term disability benefits.[3]

**D.   Plaintiff's request for attorney's fees and costs**

In her complaint, Plaintiff requests an award of attorney's fees and costs. "In an action . . . to enforce a right under ERISA, . . . the district court 'in its discretion,' . . . 'may allow a reasonable attorney's fee and costs of action to either party.'" *Jones v. Unum Life Ins. Co. of Am.*, 223 F.3d 130, 138 (2d Cir. 2000) (quoting 29 U.S.C. § 1132(g)(1)) (other citation omitted). In deciding whether to make such an award, the court should, ordinarily, consider five factors:

> "(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' position, and (5) whether the action conferred a common benefit on a group of pension plan participants."

*Id.* (quoting *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987), *cert. denied*, 496 U.S. 905, 110 S. Ct. 2587, 110 L. Ed. 2d 268 (1990)).

The Court has considered each of these factors and finds that, as a whole, they weigh against awarding Plaintiff attorney's fees and costs in this action.[4] First, Plaintiff has not

---

[3] The Court notes that its direction to Defendant that it must reinstate Plaintiff's long-term disability benefits does not preclude Defendant from reviewing Plaintiff's condition in the future to determine whether she remains totally disabled under the Plan.

[4] The Court notes that, had Defendant sought an award of attorney's fees and costs, the Court would have reached the same result.

demonstrated, and the record would not support, a finding that Defendant's decision to terminate Plaintiff's long-term disability benefits was in bad faith. In this case, Plaintiff suffers from, among other things, fibromyalgia for which there are no objective tests that can conclusively confirm the existence of that disease. Although Defendant came to a different conclusion than the Court, under these circumstances, the Court finds that Defendant did not act in bad faith. Likewise, the Court concludes that both parties' positions were of nearly equal merit. Finally, the Court finds that the remaining three factors do not favor either party. Accordingly, for all these reasons, the Court denies Plaintiff's request for attorney's fees and costs.

### III. CONCLUSION

After carefully reviewing the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment is **GRANTED** with respect to Plaintiff's claim under 29 U.S.C. § 1133 and is **DENIED** in all other respects; and the Court further

**ORDERS** that Plaintiff's motion for summary judgment is **DENIED** with respect to her claim under 29 U.S.C. § 1133 and is **GRANTED** in all other respects. The Court, therefore, **directs Defendant to reinstate Plaintiff's long-term disability benefits**; and the Court further

**ORDERS** that Plaintiff's request for an award of attorney's fees and costs is **DENIED**; and the Court further

**ORDERS** that Plaintiff shall file a letter brief, not to exceed **five** pages, to support her request for an award of prejudgment interest, including the rate that the Court should use to

calculate any such interest,[5] within **fifteen days** of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Defendant may, if it wishes to do so, file a letter brief, not to exceed **five** pages, in response to Plaintiff's submissions on the issue of whether the Court should award Plaintiff prejudgment interest and, if so, the rate at which the Court should calculate any such interest, within **thirty days** of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment consistent with this Memorandum-Decision and Order and close this case.

**IT IS SO ORDERED.**

Dated: September 30, 2010
        Syracuse, New York

*[signature]*
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[5] In a suit such as this one, it is within the court's discretion whether or not to award prejudgment interest. *See Jones*, 223 F.3d at 139 (citations omitted). In making this determination, the court must take certain factors into consideration. *See id.* In her letter brief, Plaintiff should discuss why she believes that these factors weigh in favor of such an award.